UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MELVIN NANCE                                                                                    PLAINTIFF

V.                                          No. 3:21-CV-103-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration[1]                                                      DEFENDANT

## ORDER

### I.  Introduction

Plaintiff, Melvin Nance ("Nance"), applied for disability benefits on August 22, 2019, alleging disability beginning on January 1, 2017.[2] (Tr. at 10). In a written decision dated November 19, 2020, an Administrative Law Judge ("ALJ") denied his application. (Tr. at 23). The Appeals Council denied his request for review on April 21, 2021, making the ALJ's denial of Nance's application for benefits the final decision of the Commissioner. (Tr. at 1).

For the reasons stated below, the Court[3] affirms the decision of the Commissioner.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

[2] At the hearing, Nance amended his alleged onset date to August 22, 2018. (Tr. at 15, 37).

[3] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II.  The Commissioner's Decision

The ALJ found that Nance had not engaged in substantial gainful activity since the amended alleged onset date of August 22, 2018.[4] (Tr. at 17). The ALJ found, at Step Two, that Nance had the following severe impairments: prostate cancer and recurring kidney stones. *Id*.

After finding that Nance's impairments did not meet or equal a listed impairment (Tr. at 18), the ALJ determined that Nance had the residual functional capacity ("RFC") to perform work at all exertional levels, with one exception: Nance would require an indoor restroom to be available during regular breaks and might be required to wear a bladder leak pad. *Id*.

The ALJ determined, based on Nance's RFC, that he was capable of performing past relevant work as a general practitioner (physician). (Tr. at 21). The ALJ made an alternative finding at Step Five. He relied upon Vocational Expert ("VE") testimony to find that, based on Nance's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, including positions as small products assembler and office helper. (Tr. at

---

[4] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

22). Based on his findings at Steps Four and Five, the ALJ concluded that Nance was not disabled. *Id*.

### III.  Discussion

#### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B. Nance's Arguments on Appeal

Nance contends that the evidence supporting the ALJ's decision to deny his application for benefits is less than substantial. His sole argument is that his bowel and urinary incontinency would preclude him from performing past work or other work in the national economy.

Nance was diagnosed with prostate cancer in 2004, when he was 41 years old, and he received radiation therapy thereafter. (Tr. at 40–57). In 2015, Nance had surgery to remove his prostate. *Id.*; (Tr. at 19). He continued to work until December 2016.[5] (Tr. at 44). On January 1, 2017, Nance told his urologist, Joseph Kueter M.D., that he was having some urinary incontinence but did not need to use a bladder leak pad. (Tr. at 274). In August 2018, Nance's PSA level was down slightly, and

---

[5] An ability to work with an impairment shows that the impairment is not disabling. *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

Dr. Kueter noted small kidney stones. (Tr. at 254–255). Dr. Kueter treated with medication management and told Nance to follow-up in 6 months. *Id*.

In March 2019, Nance was still not needing to wear pads, and his labs were normal, according to Dr. Kueter's notes.[6] (Tr. at 248–269). In September 2019, Nance told Dr. Kueter that his urinary incontinence was worse. (Tr. at 294–298). Dr. Kueter diagnosed stable nocturia, and noted that Nance was now wearing a pad occasionally. *Id*. He continued medication management and told Nance to follow-up in 6 months.[7] *Id*. In October 2020, at a visit with Dr. Kueter, Nance said his bowels were "a little better." (Tr. at 353–354). He was told to return for PSA checks every 6 months. *Id*.

Dr. Kueter filled out a medical source statement on April 3, 2020, in which he said that Nance would need "easy and frequent access to a bathroom due to permanent urinary incontinence." (Tr. at 290–291). The ALJ found this opinion to be persuasive given Dr. Kueter's treating relationship with Nance and Nance's own complains of incontinency.[8] (Tr. at 20).

---

[6] At the 2020 hearing, Nance said "finally I learned to wear pads and that helps." (Tr. at 60). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

[7] The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

[8] Nance testified that incontinency would make work impossible, and that he needed to use a restroom as often as once per hour. (Tr. at 53–62). Functional limitations must have a basis

The ALJ asked the VE if Nance could perform his past work as a physician if he would require an indoor restroom to be available during regular breaks, with the possible use of a pad if necessary. (Tr. at 18, 64–68). The VE said Nance could perform that past work. *Id*. Then the VE testified that, even with an additional two more restroom breaks per day, he could return to work as a physician.[9] (Tr. at 66). The VE explained that with highly skilled positions, such as physician, there is more "leeway" for breaks throughout the day. (Tr. at 66).

Nance did not require more than occasional office visits for his impairments, and his treatment was conservative. He said that a pad helped with his problems, and that he only started using them toward the end of the relevant time-period. Realizing that this treatment was effective, the ALJ incorporated the use of a pad into the RFC. The RFC incorporated all of Nance's credible limitations, including the portions of Dr. Kueter's opinion that were supported by medical evidence. And the finding that Nance could perform past relevant work and other work in the national economy was well-supported by VE testimony.[10]

---

in the medical evidence and are not established based solely on a claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908; *Harris*, 356 F.3d at 930 (8th Cir. 2004).

[9] It is appropriate for an ALJ to consult the VE and such testimony constitutes substantial evidence when it is in response to a hypothetical that captures all the concrete consequences of a claimant's impairments. *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011).

[10] The Court finds it noteworthy that Nance said he was motivated to apply for disability benefits because his parents could not support him financially for very much longer. (Tr. at 41–42). Financial hardship is not a basis for an award of benefits.

## IV. Conclusion

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC incorporated all of Nance's credible limitations and the ALJ did not err at Step Four. The finding that Nance was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

ORDERED this 1st day of March, 2022.

_____
UNITED STATES MAGISTRATE JUDGE